IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON

## ELIZABETH  DIANE BOSI v. KEVIN  P. BOSI

**An Appeal from the Circuit Court for Shelby County**
**No. 154252 R.D.; The Honorable Karen R. Williams, Judge**

---

**No. W1999-01533-COA-R3-CV - Decided May 24, 2000**

---

This appeal arises from a Petition to Modify Custody filed by plaintiff-Father.  Father alleged that a material change in circumstances had occurred because defendant-Mother had deteriorating mental health conditions and was involved in a violent and abusive relationship.  In addition, Father alleged that Mother was unnecessarily hospitalizing the parties' minor child for psychotic disorders.  The trial court found in favor of Father and granted him sole custody of the child and allowed only supervised visitation of the child with Mother.  Mother appeals on the basis that the trial court lacked jurisdiction over the child.  In the alternative, Mother asserts that there was not a material change in circumstances warranting a change in custody.

**Tenn.R.App.P. 3; Judgment of the Circuit Court Affirmed.**

HIGHERS, J., delivered the opinion of the court, in which FARMER, J., and LILLARD, J., joined.

Patricia A. Woods, Memphis, for Appellant, Elizabeth Diane Bosi

Wendy S. Dabbous, Andrea M. Lazarini, Memphis, for Appellee, Kevin P. Bosi

**OPINION**

Elizabeth Bosi ("Mother") appeals from the trial court's grant of custody of the parties' minor child to Kevin Bosi ("Father") and limitation of Mother's visitation.  Mother alleges that trial court lacked jurisdiction to modify custody.  In the alternative, Mother asserts that there was not a significant change of circumstances warranting a change in custody.  For the following reasons, the judgment of the trial court is affirmed.

**Facts and Procedural History**

This appeal arises from a petition to modify custody filed by Father.  Father sought full custody of the parties' minor child[1] based on the alleged violent and physically abusive atmosphere at Mother's home, Mother's deteriorating mental health condition, and Mother's hospitalization of

---

[1] Heather, the parties' minor child, is now age six.

the child. Based upon the report of the Guardian Ad Litem subsequently appointed by the court and other evidence presented at trial, the court granted Father's petition. Mother appeals based on the facts as set forth below.

The parties were divorced in April 1997; at the time of divorce both parties and the child were residents of Tennessee. The divorce decree incorporated a marital dissolution agreement providing that Mother would be primary custodian of the minor daughter. The agreement provided that Mother could move from Tennessee without Father's interference and that Father would have reasonable visitation rights.

In July or August of 1998, Mother and child moved to Mississippi with Mother's fiancé (Mother is now married to the fiancé). After the move, Father's visitation with the child continued as scheduled. Only one of these visits took place at the child's new residence; the remaining visits were at Father's residence in Memphis, Tennessee.

On January 28, 1999, Mother consulted Father regarding the possible hospitalization of the child to determine whether the child suffered from attention deficit hyperactivity disorder, bipolar disorder, or any other psychotic disorders. Father questioned the necessity of this action. On February 2, 1999, the child was admitted to St. Francis Hospital for testing and diagnosis.

Father contacted a staff member of the hospital and was updated about the child's condition. According to Father, he was advised that the child suffered from attention deficit disorder and hyperactive disorder as well as being both violent and delusional. In addition, Father was informed that the child had likely been sexually abused and was not in a healthy environment. Finally, Father was advised that child's hair was being treated for lice by the hospital.[2]

On February 4, 1999, Father filed a Petition for Modification of Custody in the Shelby County Circuit Court. Father sought the appointment of a Guardian Ad Litem ("GAL") to represent the child and oversee the child's healthcare decisions. The court appointed a GAL at an ex parte hearing on that date.

On February 26, 1999, the court awarded temporary custody of the child to the paternal grandfather ("Grandfather") pending an investigation by the GAL.[3] Under the court order, both Mother and Father were allowed supervised visitation with the child. Shortly thereafter Mother attempted to retrieve child from Grandfather's care in violation of the court's order. Based upon this incident, Mother's visitation was suspended by the court.

---

[2]The child had suffered repeated lice infestations. Mother, Father, and the child's grandfather had all treated the child for lice during the previous year.

[3]Mother's counsel resigned at this time citing a conflict of interest. Mother was unable to obtain new counsel until March 30, 1999. During the intervening period, the court granted several continuances in order for Mother to seek representation.

On April 13, 1999, the GAL report was presented to the court. The report contained a detailed description of the GAL's investigation, including a summary of her interviews with twenty-one different witnesses. These witnesses included the parties, the child, friends and relatives of both parties, the child's teachers and counselors, as well as other individuals. The GAL report recommended that Father be granted sole custody of the child with Mother granted limited supervised visitation. The report characterized Mother as a flight risk and found that she did not protect the child from inappropriate behavior and influences.

On April 15, Mother filed a motion to dismiss Father's petition for lack of subject matter jurisdiction because the child was a resident of Mississippi.[4] According to Mother, the child's home state was Mississippi and jurisdiction to modify the custody decree rested with the home state under both Mississippi's and Tennessee's versions of the Uniform Child Custody Jurisdiction Act[5] ("UCCJA"). A hearing on this issue was held on April 29, 1999. At the time of the hearing, the court took the matter under advisement without making a ruling. Shortly thereafter, the lower court judge contacted the alleged "home state" Mississippi court whereupon that court waived jurisdiction in the matter. Following the Mississippi court's waiver of jurisdiction, the trial court retained

---

[4] Mother filed a supporting affidavit stating that she and the child had been residing in Mississippi since July 10, 1998.

[5] Tennessee's version of the UCCJA provides in relevant part: § 36-6-216. Initial custody determination; jurisdiction

(a) Except as otherwise provided in § 36-6-219, a court of this state has jurisdiction to make an initial child custody determination only if:

(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six (6) months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

(2) A court of another state does not have jurisdiction under subdivision (a)(1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under § 36-6-221 or § 36-6-222, and:

(A) The child and the child's parents, or the child and at least one (1) parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

(B) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

(3) All courts having jurisdiction under subdivision (a)(1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under § 36-6-221 or § 36-6-222; or

(4) No court of any other state would have jurisdiction under the criteria specified in subdivision (a)(1), (2), or (3).

(b) Subsection (a) is the exclusive jurisdictional basis for making a child-custody determination by a court of this State.

(c) Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child-custody determination.

jurisdiction and proceeded with the hearing on Father's motion.

At the hearing, Father and Mother's sister ("Sister") testified about Mother's history of mental problems. A long-time neighbor ("Neighbor") of the parties as well as Sister testified about Mother's inability to effectively discipline the child. Neighbor also testified that Mother had told her of an instance of physical abuse between Mother and Mother's new husband. Grandfather testified about the child's behavior in the period shortly after she came to live with him under the temporary custody arrangement. In particular, Grandfather recounted an incident in which the child stated that Mother's new Husband was violent and that she, the child, wanted to be violent also.[6] The child's GAL testified regarding her investigation and findings; this testimony reiterated the content of the GAL report. Neither Mother nor Mother's new husband testified at the hearing.

By order entered on May 28, 1999, the court found that there had been a material change of circumstances that warranted a change in custody and that Father should be granted sole custody of the child. According to the court, Mother's bipolar disorder had a negative effect on the child that was unforseen at the time of the entry of the divorce decree and Mother was acting in a way that did not serve the child's best interest. In addition, the court held that Mother's future visits with child should be supervised.

Mother appeals, asserting that the trial court erred. Mother claims that the GAL investigation was inadequate because the GAL did not visit the child's residence, school, or church in Mississippi.[7] In addition, Mother asserts that the trial court did not have proper jurisdiction over the case, that the trial court acted improperly in granting temporary custody to the child's grandfather, that there was no material change in circumstances warranting a change in custody, and that Mother's visitation should not be limited and supervised.

## Analysis

In child custody cases, appellate review is de novo upon the record with a presumption of the correctness of the trial court's findings of fact. See TENN. R. APP. P. 13(d); see also Hass v. Knighton, 676 S.W.2d 554, 555 (Tenn.1984); Dalton v. Dalton, 858 S.W.2d 324, 327 (Tenn. App.1993); Winchester v. Collier, No. 02A01-9802-CV-00046, 1999 WL 250176, at *5 (Tenn. App. April 28, 1999). Trial courts are vested with broad discretion in matters of divorce and child custody, and appellate courts will not interfere except upon a showing of erroneous exercise of that discretion. Whitaker v. Whitaker, 957 S.W.2d 834, 836-837 (Tenn. App. 1997).

## A. Jurisdiction

---

[6] Upon objection by Mother, the court below noted that Grandfather's account of the child's statement was not hearsay because it was being offered to show the child's state of mind when she made the statement, and not offered for the truth of the matter asserted. See Rule 801(c) Tenn. R. Ev.

[7] Although Mother raises some question about the *thoroughness* of the GAL's investigation, she did not raise any hearsay objections to the GAL's report at trial or on appeal.

-4-

As a preliminary matter, we find it necessary to address the jurisdictional issue raised by Mother. Mother asserts that the court below lacked jurisdiction over the child custody matter because the child's home state was Mississippi, not Tennessee. According to Mother, the child had been residing in Mississippi since July 1998, which was more than six months before Father filed his Petition to Modify Custody in February 1999. Father claims that the actual date of the child's move to Mississippi was August of 1998. Based on the Mississippi court's waiver of jurisdiction, we find it unnecessary to determine the exact date of the child's move.[8]

In support of her argument, Mother cites the Homberg case. Homberg v. Homberg, No. 02A01-9404-CV-000901994 WL 695300 (Tenn. Ct. App. Dec. 13, 1994). In the Homberg case, a custody dispute arose between the father, a resident of Tennessee, and the mother, a resident of Alabama. Mother and child had been living in Alabama for more than three years when father filed a petition to modify custody in the Tennessee courts. Homberg at *1. The Tennessee court granted father immediate temporary custody at an ex parte hearing. Mother was not given notice of the hearing or the change in custody until she turned child over to father for his regular visitation. Mother then filed a motion to set aside the temporary custody order based on the Tennessee court's lack of jurisdiction over the child. This motion was denied and after a trial on father's petition, father was granted primary physical custody. Homberg at *1. On appeal to this court, mother argued that the Tennessee court did not have jurisdiction because the child was a resident of Alabama at the time the petition to modify custody was filed. We agreed, holding that the trial court in Homberg did not have jurisdiction over the child, and that therefore, the modification of custody was not valid.

In the case at bar, Mother relies on our decision in Homberg to support her argument that the court below did not have jurisdiction. While there are certain similarities between the cases, the facts in Homberg are not analogous to the facts in this case. First, in this case, there was not a definite finding that the child was a resident of Mississippi rather than Tennessee. As such, there was no guarantee that Mississippi had home state jurisdiction over the child. Secondly, in this case, the Mississippi court declined to exercise jurisdiction over the child. Therefore, pursuant to § 36-6-216(a)(3) of TUCCJA, the courts of this state may obtain jurisdiction over a child if any other state with a jurisdictional claim declines to exercise jurisdiction on the grounds that Tennessee is a more appropriate forum. See Tenn. Code Ann. § 36-6-216(a)(3). Accordingly, Tennessee may exercise jurisdiction in the case at bar based on the Mississippi court's decision not to exercise jurisdiction over the minor child. Therefore, the trial court had the requisite jurisdiction to hear and determine the matter.[9]

---

[8] Mother raises some question about the appropriateness of any approval obtained from the Panola County, Mississippi court. Mother claims that the child actually resides in Lafayette County, Mississippi. From our review of the record, it appears that the child's physical residence was in Lafayette County while the child's mailing address was in Panola County. However, although the record identifies the Mississippi judge as a Panola County chancellor, the judge is chancellor in the Eighteenth District which includes Lafayette County. Accordingly, this issue is without merit.

[9] We find it appropriate to note that Tennessee has now adopted the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA). This act was not in effect in February 1999, when Father filed his petition to modify custody. Accordingly, UCCJEA is not relevant to these proceedings.

-5-

## B. Temporary Custody

On appeal, Mother asserts that the trial court erred in ordering the child into temporary custody in Tennessee. Again, Mother bases this argument on the child having a home-state residence in Mississippi rather than Tennessee. As stated above, regardless of whether or not the Mississippi court actually had jurisdiction over this matter, Mississippi declined to exercise that jurisdiction. Accordingly, we find it unnecessary to further address this argument.

## C. Material Change in Circumstances

In child custody cases, the law is well established that when a decree awarding custody of children has been entered, that decree is res judicata and is conclusive in a subsequent application to change custody unless some new fact has occurred which has altered the circumstances in a material way so that the welfare of the child requires a change of custody. Long v. Long, 488 S.W.2d 729 (Tenn. Ct. App.1972) In other words, once the trial court has made an initial determination with respect to custody, it cannot entertain a subsequent petition to modify custody absent a material change in circumstances such that the welfare of the child demands a redetermination. See, e.g., Massengale v. Massengale, 915 S.W.2d 818, 819 (Tenn. Ct. App.1995). In this case, Mother argues that there was not a material change in circumstances unforseen at the time of the initial custody decree and that as such, the trial court did not properly alter the existing custody decree.

A "material change in circumstances" justifying modification of a child custody order may include factors arising after the initial determination or changed conditions that could not be anticipated at the time of the original order. See Blair v. Badenhope, 940 S.W.2d 575, 576 (Tenn. Ct. App.1996) citing Dalton v. Dalton, 858 S.W.2d 324, 326(Tenn. Ct. App.1993). If the trial court finds that there has been a material change in circumstances, it will then consider the petition to modify custody using a best interests standard. Woolsey v. McPherson, No. 02A01-9706-JV-00125, 1998 WL 760950, at *2 (Tenn. Ct. App. Nov. 2, 1998).

As this court has previously recognized, there is a strong presumption in favor of the existing custody arrangement. Smithson v. Eatherly, No. 01A01-9806-CV-00314, 1999 WL 548586 at *2 (Tenn. Ct. App. July 29, 1999) citing Taylor v. Taylor, 849 S.W.2d 319, 332 (Tenn. 1993). The party seeking to change the existing custody arrangement has the burden of proof to show both that the child's circumstances have materially changed in a way that was not reasonably foreseeable at the time of the original custody decision and that changing the existing custody arrangement will serve the child's best interests. Geiger v. Boyle, No. 01A01-9809-CH-00467, 1999 WL 499733 at *3 (Tenn. Ct. App. July 16, 1999); citing Smith v. Haase, 521 S.W.2d 49, 50 (Tenn. 1975.); McDaniel v. McDaniel, 743 S.W.2d 167, 169 (Tenn. Ct. App. 1987); Seessel v. Seessel, 748 S.W.2d 422, 429 (Tenn. 1988); Hall v. Hall, No. 01A01-9310-PB-00465, 1995 WL 316255, at *2 (Tenn. Ct. App. May 25, 1995).

Under this standard, the primary inquiry is whether there has been a material change in the child's circumstances. Although there is no concrete definition for what constitutes a material change of circumstances, this court has enumerated several factors that should be taken into

-6-

consideration when determining whether such a change has occurred. In general, the change must occur after the entry of the order sought to be modified and the change cannot be one that was known or reasonably anticipated when the order was entered. Turner v. Turner, 776 S.W.2d 88, 90 (Tenn. Ct. App. 1988); Dalton v. Dalton, 858 S.W.2d 324, 326 (Tenn. Ct. App. 1993). In addition, the material change of circumstances must be a change in the child's circumstances, not the circumstances of either or both of the parents. McCain v. Grim, No. 01A01-9711-CH-00634, 1999 WL 820216 at *2 (Tenn. Ct. App. Oct. 15, 1999). Finally, the change must affect the child's well-being in a material way. Dailey v. Dailey, 635 S.W.2d 391, 393 (Tenn. Ct. App. 1981). Tennessee courts have based modification of child custody decrees on the following criteria: the character of the custodian; the conduct of the custodian; and the child's welfare. Townshend v. Bingham, No. 02A01-9801-CV-00019, 1999 WL 188290, at *4 -*5 (Tenn. Ct. App. Apr. 6, 1999).

In this case, the alleged change in circumstances involves both Mother's mental health and her relationship with her new husband. According to Mother, Father was well aware of her history of emotional problems and could not rely on her mental condition to show a change in circumstances. Indeed, the evidence presented at trial along with Father's sworn affidavit show that he had knowledge of Mother's instability. However, Father was also aware that Mother's condition could be controlled by medication and Father assumed Mother would continue to take medication after receiving custody of the child. In addition, at the time of the original custody decree, Mother was not involved with her new husband in what has been characterized as a dangerous and abusive relationship.

Based on the standard stated above, we find that the trial court did not err in finding that there was a material change in circumstances unforseen at the time of the original custody decree. The evidence offered at trial as well as the GAL report, reflect that Mother's behavior and circumstances have been significantly altered since the original custody decree. Therefore, the decision of the trial court is affirmed on this issue.

### D. Supervised Visitation

As a final issue, Mother argues that the trial court erred in requiring that all her visitations with the minor child be limited and supervised. From our review of the record, it is likely that the trial court based this decision on the Mother's previous attempt to retrieve the child from Grandfather's custody as well as the GAL's finding that Mother could be a flight risk. Based on these facts, as well as Mother's apparent instability, we find that the decision of the trial court was not in error. The court did not err in limiting Mother's contact with child to supervised visitation.

### Conclusion

For the foregoing reasons, the decision of the trial court is hereby affirmed. Costs of appeal are taxed to Appellant, Elizabeth Diane Bosi, for which execution may issue, if necessary.